No. 52,300

STATE OF KANSAS, *Appellee,* v. JUDY J. GARNES, *Appellant.*

(624 P.2d 448)

Opinion filed February 28, 1981.

*David L. Hiebert,* of Gragert & Hiebert, of Wichita, argued the cause and was on the brief for the appellant.

*Beverly Dempsey,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Michael Barbara,* assistant district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Judy J. Garnes appeals her conviction by a jury in Sedgwick District Court of two counts of aggravated battery, K.S.A. 21-3414, one count of aggravated robbery, K.S.A. 21-3427, and one count of attempted murder, K.S.A. 21-3301, 21-3401. The court imposed concurrent sentences. On appeal, the defendant contends that the trial court erred in declaring the victim a turncoat witness, in failing to acquit her on the aggravated battery

charges because they were multiplicitous, and on all charges because of insufficiency of the evidence, and in giving a jury instruction on condonation. PIK Crim. 54.15.

The victim, Linda McHone, together with the defendant, Judy Garnes, and Michael Pennington (also known as Sherry) went together in Judy's car to the Elks Club in Wichita around 12:15 o'clock a.m. on September 22, 1979. Judy drove. The women went into the club while Michael remained in the car with his homosexual lover, a man named Charles. About 45 minutes later Linda left the club and returned to the car. After she got in the back seat, Charles hit her in the face four times with his fists. She pulled a knife out of her purse; Charles got out of the car; she tried to get out and Charles struck her two more times; then he started walking toward the club. Knife in hand, she followed.

A crowd had gathered to watch the fight. Judy Garnes left the bar. Linda testified that as she was following Charles, she heard someone call her name; she turned back toward the car, saw Judy, started to walk toward her, and heard two shots. The flash of the gun came from where Judy was standing; the first shot missed but the second hit Linda in the neck.

Both women dropped their weapons. They argued; Judy wanted Linda to go to the hospital, but Linda refused. Finally they got into the front seat of the car. Judy again was the driver; Michael sat in the middle, Linda on the right. They left the area of the shooting, argued about whether to take Linda to a hospital, stopped momentarily at the home of a friend, drove around some more, and finally stopped in a field some distance north and east of Wichita.

Linda and Judy both testified that Michael pulled a gun and pointed it at Linda's head; he stabbed her in the back with a knife and then pushed her out of the car. Next, he pointed the gun at Judy, gave her the knife and told her to kill Linda; he threatened to kill Judy if she did not comply. Judy got out and walked around the car. Michael locked the doors, continued to keep the gun pointed at Judy, and told Judy to "finish her off." Judy said, "Why are you making me do this? I don't want to do it." She stabbed Linda twice in the back and twice in the rib cage. Michael got out of the car and took the knife. Judy took Linda's vest off; Michael removed the rest of Linda's clothes and stabbed her between the legs. He threw the clothes in the back seat and

pulled Judy into the car. Michael drove the car over Linda three times; the last time one of her legs caught in the undercarriage and she was dragged about thirty feet. He then drove off, leaving Linda in an open field, nude, with six stab wounds, one gunshot wound, and a broken pelvis. She was discovered by a farmer about ten o'clock the following morning; she was rushed to the hospital; remarkably, she survived.

Linda gave several taped statements to the investigating officers while she was in the hospital. These differed materially from her trial testimony. In the statements she said that she did not see the gun out in the country; Michael did not pull the gun out, and he did not get out of the car. Judy alone was primarily responsible. Judy said she was going to cut Linda's heart out, that she was going to kill her. Judy stabbed her in the back while they were still in the car. Linda got out and Judy came at her with the knife. Michael locked the car so Linda couldn't get back in. Judy stabbed her between the legs, then stabbed her four or five times more. It was Judy who took all of Linda's clothes off and it was Judy who drove the car and ran over Linda three times.

We turn first to the action of the trial court in declaring Linda McHone a turncoat witness, and in allowing her prior statements to be introduced not only for impeachment purposes but as substantive evidence. The victim testified at trial that the defendant knifed her at the direction of Michael Pennington, who ordered her to do it and who held her at gunpoint to enforce that order. She also testified that Pennington drove the car and ran over her. The earlier statement said that it was Judy Garnes who took the initiative, Judy Garnes who threatened to kill her and who attempted to do so with knife and car. The statements were given shortly following the acts; the testimony came four months later, after an exchange of correspondence and after Judy and Linda had been incarcerated together. This was a substantial change in the victim's version of the events, an important change insofar as the intent of the defendant is concerned.

The trial judge heard the testimony of the victim, was advised of the changes in her story of the events, heard arguments of counsel, researched the law, and gave the matter careful consideration before he declared her a hostile witness. As we stated in *State v. Fisher,* 222 Kan. 76, 78, 563 P.2d 1012 (1977), the exercise of judicial restraint in allowing admission of evidence under

K.S.A. 60-460(*a*) is implicit in this exception to the hearsay rule. The trial court ought not admit the evidence if better evidence is available, or if no good purpose is served by receiving it. It is a matter which the trial court must determine on the facts of each case by the careful exercise of judicial discretion. Here, the evidence differed materially from that otherwise available; it was available through no other source; and it was germane and relevant to the issues before the jury. We think the trial court was correct in declaring her hostile and in admitting the evidence. We find no abuse of discretion.

The trial court instructed the jury that, "It is not a defense that the injured party or victim has excused or forgiven the offense committed." The instruction is taken from PIK Crim. 54.15, and accurately states the law. It is not challenged on that basis; instead, defendant contends that the evidence does not justify the giving of the instruction because (1) the evidence does not establish that the defendant committed any crime, (2) the evidence does not establish that the victim has forgiven the defendant for committing a crime against her, and (3) the instruction invades the province of the jury.

In determining whether the evidence is sufficient to establish that defendant committed the crimes charged, and whether the evidence is sufficient to sustain the conviction, the standard for review on appeal is set forth in *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979):

"Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?"

Applying that standard to the evidence already detailed in this opinion, it is readily apparent and we find that the evidence is amply sufficient to sustain the convictions. According to the initial statements of the victim, Judy Garnes shot her, knifed her repeatedly, ran over her several times with a car, and took the victim's clothing and money by force while armed with and using a dangerous weapon to inflict bodily harm upon the victim, all intentionally and without compulsion. Certainly a rational fact-finder could find guilt beyond a reasonable doubt.

As to forgiveness, appellant admits in her brief that the victim has obviously forgiven or excused her for the shooting and stabbing. The evidence discloses that the defendant and the

victim were living together and were homosexual lovers prior to the events of September 22, 1979. After the occurrence they exchanged numerous letters. At the time of trial they were incarcerated together in the Sedgwick County jail. Linda McHone testified that at the time of trial, she considered herself "close to" and "friends with" Judy Garnes, and not at all afraid of her. There was abundant competent evidence that the victim excused or had forgiven the defendant for committing the offenses.

We fail to see that the instruction invades the province of the jury. It does not single out and emphasize any particular evidence. Since the victim excused or had forgiven the defendant, and had changed her version of the events so that it supported the defendant's testimony, the court properly instructed the jury that condonation was not a defense. We find no error.

Finally, we turn to defendant's claim that the trial court erred in failing to acquit her on the aggravated battery charges because they were multiplicitous with the attempted murder charge, and because the evidence was insufficient to support all of the charges. We have already dealt with the claim of insufficiency of the evidence and find that claim to have no merit.

Count I of the information charges the defendant with aggravated battery by shooting Linda McHone with a deadly weapon, a small-caliber gun. Count II charges the defendant with aggravated battery by stabbing Linda McHone with a deadly weapon, a knife. Count IV charges the defendant with the attempted murder of Linda McHone. The overt acts included in that charge are: shooting Linda McHone; stabbing her; running over her with an automobile; and abandoning her in a remote area. Defendant argues that Counts I and II are multiplicitous with Count IV in that the facts from one continuous series of events and the shooting and the stabbing are relied upon as the acts of force in Counts I and II and as the overt acts forming the basis for Count IV.

Multiplicity in criminal pleading is the charging of a single offense in several counts. *State v. Dorsey,* 224 Kan. 152, 154, 578 P.2d 261 (1978). In that case we discussed many of our earlier opinions on the subject. Multiplicity exists when the State attempts to use a single wrongful act as the basis for multiple charges. The general principles for determining whether charges are multiplicitous are these:

(1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.

*Example:* Where an aggravated assault or aggravated battery directly results in a homicide, the offenses become merged. See *State v. Clark,* 204 Kan. 38, 44, 460 P.2d 586 (1969).

(2) If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.

*Example:* The essence of aggravated robbery is to deprive a person of property, an element not found in homicide. Though a homicide is committed in the course of an aggravated robbery, the offenses do not merge. *State v. Rueckert,* 221 Kan. 727, 733, 561 P.2d 850 (1977). Similarly, federal bank robbery does not merge with State charges of aggravated robbery (of an individual), aggravated kidnapping, and kidnapping. See *State v. Smith & Miller,* 224 Kan. 662, 669-670, 585 P.2d 1006 (1978), *modified on rehearing,* 225 Kan. 199, 588 P.2d 953, *cert. denied* 441 U.S. 964 (1979).

(3) Where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act.

*Example:* An assault and battery, following which the victim broke away, does not merge with and is distinct from forcible rape, which occurred at a later time and at a different place. See *State v. James,* 216 Kan. 235, 531 P.2d 70 (1975).

We now turn to the facts of this case in the light of these rules. The shooting occurred at the Elks Club; the acts which then occurred constituted aggravated battery. That act was separate and distinct from what occurred sometime later in the field many miles away. The wound then inflicted appears superficial; the victim entered defendant's vehicle in the presence of a large crowd of people, presumably to be taken to a hospital or at least to some place where her wound could be treated. We conclude that Count I, charging aggravated battery by shooting, is a separate and distinct offense and that it is not multiplicitous with or merged in Count IV, the attempted murder charge. See *State v. James,* 216 Kan. 235.

The stabbing, however, is another matter. The victim was not stabbed until the car stopped in a remote field northeast of

Wichita. Then she was stabbed five or six times in rapid succession, she was disrobed, robbed, and run over several times; she was abandoned and left to die. If Linda McHone had simply been pushed out of the car and abandoned with a slight neck wound, it is unlikely that attempted murder would have been charged or could have been proven. There would be no attempted murder, under the circumstances of this case, without the vicious stabbing and mutilation of the victim, and the attempt to crush her body with the car. Although the shooting was listed as an overt act in Count IV charging attempted murder, the shooting was insignificant. The events that took place immediately before abandonment—the stabbing and the running over—established the offense of attempted murder. We conclude that Count II, charging aggravated battery by stabbing, was multiplicitous with Count IV, the charge of attempted murder, and Count II should have been dismissed. See *Jarrell v. State,* 212 Kan. 171, 173, 510 P.2d 127 (1973).

The conviction and sentence for aggravated battery by stabbing, as charged in Count II of the information, is set aside and the judgment reversed to that extent; in all other respects the judgment is affirmed.