No. 89,010

STATE OF KANSAS, *Appellee,* v. ANTHONY C. GROVES, *Appellant.*

(95 P.3d 95)

Opinion filed July 30, 2004.

*Debra J. Wilson,* capital appellate defender, argued the cause and was on the briefs for appellant.

*John H. Taylor,* assistant county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Anthony C. Groves appeals his convictions for aggravated robbery and aggravated battery. He contends: (1) The convictions are multiplicitous because the same act of violence provides the basis for each conviction; (2) the district court erred in failing to give the jury a multiple counts instruction as recommended in PIK Crim. 3d 68.07; and (3) the district court erred in denying Groves' pretrial motion to suppress evidence.

The Court of Appeals unanimously held that the convictions for aggravated robbery and aggravated battery are multiplicitous. Consequently, it reversed the aggravated battery conviction and ordered that charge to be dismissed. It affirmed Groves' conviction for aggravated robbery, however, as well as the denial of the motion to suppress. 31 Kan. App. 2d 635.

We granted petitions for review filed by both Groves and the State. We affirm the Court of Appeals. Specifically, the aggravated battery conviction is reversed and that charge is ordered to be dismissed; Groves' conviction for aggravated robbery is affirmed.

## FACTS

The underlying facts are not in material dispute. On April 28, 2001, someone grabbed Terri Lott's purse from her in the Junction City Wal-Mart parking lot. She was thrown to the ground during the struggle for her purse, suffering a fractured sacrum. Her assailant ran and jumped into a taupe or gold Thunderbird that was sporting a torn black car bra and was being driven by a woman. Officer Nick Walker knew that Anthony Groves owned such a car, and he was not aware of any similar vehicles in Junction City. He and other officers went to 1017 North Jefferson Street, residence of Kimberly Davis, where they found Groves' car and, after obtaining Davis' permission to search, found Groves hiding in the cellar.

Police seized Groves' car without a warrant or his consent and towed it to a secure garage. They later obtained a search warrant and inside the car found a bank deposit slip from the Fort Riley National Bank with Lott's name on it; Lott later identified it as having been in her purse.

At trial, the issue was whether Groves committed the crime. He was identified by one eyewitness to the crime as the assailant. Others identified his vehicle as the one seen leaving the parking lot and his clothing as the articles worn by the assailant. The jury determined Groves to be the assailant and convicted him of aggravated robbery and aggravated battery. The court sentenced him to 61 months on the aggravated robbery count and 41 months on the aggravated battery count, with the sentences to be served concurrently.

## ANALYSIS

*Multiplicity*

Groves argues the convictions are multiplicitous because they arise out of the same act of violence. Notwithstanding Groves' failure to raise this issue before the district court, the Court of Appeals considered the issue on appeal under the authority of *State v. Taylor,* 25 Kan. App. 2d 407, 409-10, 965 P.2d 834, *rev. denied* 266 Kan. 1115 (1998). This was appropriate. See *State v. Dubish,* 234 Kan. 708, 718, 675 P.2d 877 (1984) (multiplicity may be raised for

first time on appeal in order to serve the ends of justice and prevent a denial of the fundamental right to a fair trial).

Whether convictions are multiplicitous is a question of law subject to unlimited review. *State v. Schuette,* 273 Kan. 593, 600, 44 P.3d 459 (2002).

As the Court of Appeals stated:

" 'Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights.' *State v. Robbins,* 272 Kan. 158, 171, 32 P.3d 171 (2001)." 31 Kan. App. 2d at 636.

The Court of Appeals then described in detail why it agreed with Groves' argument on multiplicity:

."There is impressive case precedent supporting Groves' claim of multiplicitous convictions. In *State v. Warren,* 252 Kan. 169, 843 P.2d 224 (1992), the Kansas Supreme Court analyzed Warren's convictions for aiding and abetting aggravated robbery and aiding and abetting aggravated battery after Warren suggested to two women that they should commit robbery in order to obtain drug money and for providing transportation to the women who knocked an elderly woman down and stole her purse. The court reversed the aiding and abetting aggravated battery conviction after it determined convictions for aggravated robbery and aggravated battery were multiplicitous when the same act of violence provided the basis for each conviction. 252 Kan. at 182.

"Warren was followed by *State v. Vontress,* 266 Kan. 248, 970 P.2d 42 (1998), in which the Kansas Supreme Court again analyzed a multiplicity argument relating to convictions for aggravated robbery and aggravated battery. The court determined a single act of violence, the shooting of one of the victims, was used to prove both crimes and resulted in a multiplicitous conviction:

'The State fails to acknowledge that the sole allegation of bodily harm in its complaint and the judge's instructions to the jury was Spires' gunshot wounds. To prove the bodily harm element of aggravated robbery, the State was required to prove one fact: Vontress shot Spires—the same fact necessary for proof of the great bodily harm element of aggravated battery. Under the information and instructions in this case, the aggravated battery count required proof of the fact which was also required to prove the aggravated robbery charge. Therefore, the convictions are multiplicitous, and punishment for both crimes is a violation of double jeopardy. The aggravated battery conviction is reversed.' 266 Kan. at 257.

"This court is duty bound to follow Kansas Supreme Court precedent unless there is a clear indication that the court is departing from its previous holding.

*Mueller v. State,* 28 Kan. App. 2d 760, 763, 24 P.3d 149, *rev. denied* 271 Kan. 1037 (2001), *cert. denied* 535 U.S. 997 (2002).

"We acknowledge since *Warren* and *Vontress* were decided, K.S.A. 21-3107 has been amended to remove former K.S.A. 21-3107(2)(d). See L. 1998, ch. 185, § 1. The significance of that amendment was considered in *State v. Garcia,* 272 Kan. 140, 32 P.3d 188 (2001). In *Garcia,* the Supreme Court followed its decisions in *Warren* and *Vontress* when it held the appellant's conviction for aggravated kidnapping was multiplicitous with either the rape or aggravated criminal sodomy convictions because 'the bodily harm needed to prove aggravated kidnapping was the same bodily harm supplied by one of the rape convictions or the aggravated criminal sodomy conviction.' 272 Kan. at 147. Although the court followed *Warren* and *Vontress,* it pointed out a change in the multiplicity analysis as a result of the revision of K.S.A. 21-3107:

'It should be noted that in 1998, the Kansas Legislature amended K.S.A. 21-3107 to essentially remove the former K.S.A. 21-3107(2)(d). See L. 1998, ch. 185, § 1. In its place, the legislature inserted a new version, K.S.A. 2000 Supp. 21-3107(2)(b), which provides that an included crime is one where "all of the elements of the lesser crime are identical to some of the elements of the crime charged." This will necessarily change the multiplicity analysis for cases which occur under the new statute and signifies a return to the identity of the elements standard that this court used prior to the enactment of K.S.A. 21-3107. Such a change, while allowing convictions for crimes which would have been multiplicitous under the statute at issue here, does not violate constitutional prohibitions against double jeopardy as it does not subject defendants to punishments greater than those intended by the legislature. [Citation omitted.]' 272 Kan. at 147.

"We do not believe the dicta in *Garcia* signifies a retreat by the Kansas Supreme Court from its holdings in *Warren* and *Vontress.* Both of those cases were analyzed under a single act of violence paradigm unaffected by a lesser included analysis under K.S.A. 21-3107, before or after the 1998 amendment. We conclude the dicta in *Garcia* is not persuasive authority the Supreme Court will retreat from its holdings in *Warren* and *Vontress.* Accordingly, we hold Groves' conviction for aggravated battery must be set aside and the charge dismissed." 31 Kan. App. 2d at 636-38.

The Court of Appeals is correct in its belief and holding that under the particular facts and offenses of this case, the single act of violence paradigm concerning multiplicity is unaffected by the lesser included analysis under K.S.A. 21-3107 before or after the 1998 amendment.

A short review is warranted, particularly since multiplicity "has been a highly confusing subject in Kansas law and our prior cases have not always been clear." *State v. Garcia,* 272 Kan. 140, 142,

32 P.3d 188 (2001). As this court stated in *State v. Winters,* 276 Kan. 34, 42, 72 P.3d 564 (2003): "The prohibition against multiplicitous charges arises from constitutional double jeopardy provisions and K.S.A. 2002 Supp. 21-3107(2). That statute provides: 'Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both.'"

Before 1969, Kansas followed the common-law test for multiplicity. *Schuette,* 273 Kan. at 600-01. Under that test, if each offense requires proof of a fact not required in proving the other, the offenses do not merge and are not multiplicitous. *Schuette,* 273 Kan. at 601 (citing *Garnes,* 229 Kan. 368, 373, 624 P.2d 448 [1981]). Offenses also do not merge if they are committed separately and severally at different times and at different places, *i.e.,* even if each offense does not require proof of a separate fact. *Schuette,* 273 Kan. at 601 (citing *Garnes,* 229 Kan. at 373).

After the passage of K.S.A. 21-3107 in 1969, however, the analysis of multiplicity began to change, particularly with this court's decision in *State v. Fike,* 243 Kan. 365, 757 P.2d 724 (1988). See *Garcia,* 272 Kan. at 144. The new, second layer of analysis was removed by the legislature in 1998. *Schuette* described the significance of the second layer and its removal at 273 Kan. at 600-01:

"K.S.A. 21-3107(2)(d) defined an included offense as 'a crime necessarily proved if the crime charged were proved' and stated that a defendant could not be convicted of both the crime charged and the included offense. This statute was amended in 1998, and subsection (2)(d) was eliminated. L. 1998, ch. 185, § 1. It was replaced with language defining an included crime as 'a crime where all elements of the lesser crime are identical to some of the elements of the crime charged.' See K.S.A. 2001 Supp. 21-3107(2)(b). The present statutory language in essence mirrors the common-law elements test, thereby leaving it as the only remaining test for multiplicity. See also *State v. Saiz,* 269 Kan. 657, 662-63, 7 P.3d 1214 (2000) (for crimes committed after effective date of 1998 amendment of K.S.A. 21-3107, second prong of *State v. Fike,* 243 Kan. 365, 757 P.2d 724 [1988,] disregarded)."

Justice Larson, who authored the *Schuette* opinion for a unanimous Supreme Court in 2002, also served as a senior judge on the Court of Appeals panel in the instant case expressly approving the single act of violence paradigm.

Kansas has recognized some form of the "single act of violence" paradigm for years. See *State v. Racey,* 225 Kan. 404, 408, 590 P.2d 1064 (1979) (conduct was one continuing unbroken act of force, so Racey could not be convicted of both aggravated assault and kidnapping); see also *State v. Bishop,* 240 Kan. 647, 653-54, 732 P.2d 765 (1987) (offenses multiplicitous if "one continuing unbroken act of force").

In *State v. Garnes,* 229 Kan. 368, 373-74, 624 P.2d 448 (1981), cited with approval in *Garcia* as setting forth the multiplicity test — "if each offense charged requires proof of a fact not required in proving the other, then offenses do not merge" — this court made no real application of this particular legal test to the facts. Rather, the court simply concluded that the offenses merged because the action supporting the aggravated battery — the stabbing — was also one of the actions supporting the attempted murder. In other words, the court apparently applied the single act of violence test.

Six years later in *State v. Cathey,* 241 Kan. 715, 719-20, 741 P.2d 738 (1987), this court explained *Garnes* and why its holding required a determination of multiplicity for defendant Cathey:

"The State argues that, though there was only one victim, there were two separate acts of violence — a beating and a shooting — and the person who inflicts such injuries can be charged with aggravated battery and attempted murder. We disagree. Where there is only one victim and two acts of violence — a beating and a shooting — occurring at approximately the same time and place, the person who inflicts such injuries cannot be charged with both aggravated battery and attempted murder. To hold otherwise would be inconsistent with our reasoning in *Garnes* that when a series of violent acts occurs simultaneously, it is multiplicitous to charge both aggravated battery and attempted first-degree murder."

*Garnes* was in turn relied upon by this court in *Warren,* which the Court of Appeals in the instant case found persuasive.

Under our case's particular facts, the single act of violence test applies and controls, especially since the pushing down and purse robbing did not just occur at "approximately the same time and place," but apparently they were both virtually contained in one physical motion. Accordingly, under the authority of *Warren* —

whose facts were quite similar — and *Vontress*, the conviction for aggravated battery must be set aside and the charge dismissed.

Since we agree the Court of Appeals correctly determined multiplicity existed, we also agree Groves' argument that the district court erred in failing to give a multiple counts instruction is moot.

*Car search*

Groves' final argument is that the district court erred in denying his motion to suppress the evidence obtained after his car was seized.

The Court of Appeals held:

"His argument is not persuasive. The '[p]olice may legally impound a vehicle if authorized by statute or if there are reasonable grounds for impoundment.' *State v. Canaan*, 265 Kan. 835, 843, 964 P.2d 681 (1998). Here, Groves' car was used as the getaway car for a purse snatching. His car had evidentiary significance regarding identification and a potential location for the purse taken from Terri Lott. Reasonable grounds for impoundment certainly encompass a car that has been used in the commission of a crime and may contain fruits or evidence of the crime. See *State v. Teeter*, 249 Kan. 548, 552, 819 P.2d 651 (1991)." 31 Kan. App. 2d at 638.

We agree this argument is not persuasive for the reasons stated by the Court of Appeals. The conviction of aggravated robbery is therefore affirmed.

Judgment of the Court of Appeals is affirmed. Judgment of the district court is affirmed in part and reversed in part.

BEIER, J., not participating.

BRAZIL, S.J., assigned.