(129 P.3d 120)

No. 93,823

STATE OF KANSAS, *Appellee,* v. TIFFANY BOLDEN, *Appellant.*

—

Opinion filed March 3, 2006.

*Jay Witt* and *Brent Getty,* assistant appellate defenders, for appellant.

*Don L. Scott,* county attorney, and *Phill Kline,* attorney general, for appellee.

Before HILL, P.J., GREENE, J., and BUKATY, S.J.

HILL, J.: In this case we must decide whether Tiffany Bolden could be convicted of both intentional aggravated battery and aggravated assault when she rammed her car into the car in which

her husband was riding with his mistress. Because Bolden's convictions arose from a single act of violence—ramming her car into the other car—we hold that her aggravated assault convictions are multiplicitous with the aggravated battery convictions, and we reverse and remand.

Furthermore, we disagree with Bolden's argument that the trial court should have given jury instructions for reckless aggravated battery or misdemeanor battery based on reckless conduct. We hold that because those crimes require the State to prove some type of bodily harm and the facts of this case reveal no bodily harm, the court did not err by not giving such instructions.

## Background Facts

There is no dispute about the facts of this case. After dining with her estranged husband, Derrick, Bolden dropped him off at his brother's residence. Later that evening Derrick was riding in a car driven by his mistress, Glenda Plunk. They were the only people in the car. Bolden followed them for awhile. Bolden flashed her lights at them, pulled her car alongside Plunk's car, and eventually rammed her car into Plunk's, forcing it to the side of the road.

After Derrick got out of the car to inspect it for damage, Bolden got out of her vehicle and tried to coax him into returning with her. Derrick refused and got back into the car with Plunk. This time, while Plunk was driving toward the police station, Bolden rammed her car into Plunk's car a second time. Without stopping, Plunk finally reached safety at the police station. She had previously obtained a protection order against Bolden.

Tiffany Bolden was convicted of two counts of intentional aggravated battery, two counts of aggravated assault, one count of criminal damage to property, one count of violation of a protection order, and one count of reckless driving.

## Aggravated Battery and Aggravated Assault Convictions

Bolden argues that her convictions, two counts of aggravated battery and two counts of aggravated assault, are multiplicitous. The frequently cited definition of multiplicity warns against charging a single offense in several counts:

"Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights." *State v. Robbins,* 272 Kan. 158, 171, 32 P.3d 171 (2001).

Even though Bolden did not raise this issue at trial, multiplicity is one of the arguments that can be raised for the first time on appeal. See *State v. Groves,* 278 Kan. 302, 303-04, 95 P.3d 95 (2004).

Recently, our Supreme Court has addressed the issue of multiplicity in *State v. Patten,* 280 Kan. 385, 122 P.3d 350 (2005).The court adopted a strict elements test in order to determine multiplicity:

"The test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." *Patten,* 280 Kan. 385, Syl. ¶ 3.

If a strict elements test is used in this case, it is clear that Bolden's convictions are not multiplicitous. A review of the instructions revealed that the State was required to prove, in part: "That the defendant intentionally caused physical contact with Glenda Plunk in a rude, insulting or angry manner with a deadly weapon whereby great bodily harm, disfigurement, or death can be inflicted." The same language was used in the aggravated battery instruction relating to Derrick. In contrast, the jury instruction on aggravated assault required the State to prove, in part: "That the Defendant intentionally placed Glenda Plunk in reasonable apprehension of immediate bodily harm." Once again, the same language was used in the aggravated assault instruction relating to Derrick.

Thus, it is apparent that the crimes of aggravated battery and aggravated assault each have different elements. For aggravated battery, the State must prove that the defendant made physical contact with the victim. No such showing is required for aggravated assault. For aggravated assault, the State must prove that the victim was placed in "reasonable apprehension of immediate bodily harm." No such showing is required to support an aggravated bat-

tery conviction. Accordingly, the elements of aggravated battery and aggravated assault are different. Thus, aggravated battery and aggravated assault are not multiplicitous under the strict elements test used in *Patten*.

But the *Patten* court did not discuss how its new test affects the "single act of violence" aspect of multiplicity. We distinguish this case from *Patten* for that reason. The most recent case dealing with this, *Groves*, describes how the defendant grabbed the victim's purse from her in a parking lot. During the struggle, the victim was thrown to the ground and consequently suffered a fractured sacrum. The jury convicted Groves of aggravated robbery and aggravated battery. Groves appealed, arguing his convictions were multiplicitous because they arose out of the same act of violence. The court stated that Kansas has recognized some form of the "single act of violence" paradigm for years. Therefore, under the specific facts of the case, the single act of violence test applied and controlled, "especially since the pushing down and purse robbing did not just occur at 'approximately the same time and place,' but apparently they were both virtually contained in one physical motion." 278 Kan. at 307.

Under the authority of *State v. Warren*, 252 Kan. 169, 843 P.2d 224 (1992), and *State v. Vontress*, 266 Kan. 248, 970 P.2d 42 (1998), the court determined the conviction for aggravated battery must be set aside. *Groves*, 278 Kan. at 307-08.

In *Warren*, the court reversed an aiding and abetting aggravated battery conviction because it found the convictions for aggravated robbery and aggravated battery multiplicitous when the same act of violence provided the basis for each conviction. Warren was the driver of the car taking two women from the scene of the crime after they forcibly took the victim's purse, knocking her to the ground and causing injuries.

In *Vontress*, the court determined convictions for aggravated robbery and aggravated battery were multiplicitous because the same act of violence—the shooting of the victim—was used to prove both crimes. Even though the victim sustained two gunshot wounds, because there was no distinction made in the charging instrument or the jury instructions between which shot supported

the bodily harm element in the aggravated battery count and which supported the aggravated robbery count, the convictions were multiplicitous. The *Vontress* court stated that the test "concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. [Citation omitted.]" 266 Kan. at 256.

Kansas has long recognized the merger of crimes when they arise from a "single act of violence." This paradigm is exemplified in *State v. Cathey*, 241 Kan. 715, 717-18, 741 P.2d 738 (1987). Cathey and his brother beat and shot the victim because they believed he had beaten their brother. Cathey was convicted of aggravated battery and attempted murder but appealed, arguing his convictions were multiplicitous. The court held:

"Where there is only one victim and two acts of violence—a beating and a shooting—occurring at approximately the same time and place, the person who inflicts such injuries cannot be charged with both aggravated battery and attempted murder. To hold otherwise would be inconsistent with our reasoning in *Garnes* that when a series of violent acts occurs simultaneously, it is multiplicitous to charge both aggravated battery and attempted first-degree murder." 241 Kan. at 719-20.

In *State v. Garnes*, 229 Kan. 368, 624 P.2d 448 (1981), the court determined the aggravated battery conviction charged in Count I was not multiplicitous with the attempted murder conviction because the shooting that supported the aggravated battery conviction occurred at an earlier time and place. The shooting was a separate and distinct act from the stabbing, running over, and abandoning that later occurred in a different location. However, since the stabbing that supported the aggravated battery conviction charged in Count II occurred simultaneous with running over the victim and abandoning her, the aggravated battery by stabbing conviction was multiplicitous with the attempted murder conviction. 229 Kan. at 373-74.

Furthermore, in *Lassley*, cited by Bolden here, the court held that the defendant's aggravated assault conviction was *duplicitous* with his kidnapping and rape convictions. According to the court, the act relied upon for the aggravated assault conviction was a

single continuous transaction in which two crimes—kidnapping and rape—were committed. *State v. Lassley*, 218 Kan. 758, 762, 545 P.2d 383 (1976); *cf. State v. Fulton*, 28 Kan. App. 2d 815, 823, 23 P.3d 167, *rev. denied* 271 Kan. 1039 (2001) ("Duplicity is the joining in a single count of a complaint two or more distinct and separate offenses.").

The two acts of violence here, Bolden ramming her car twice, several minutes apart, into the car driven by Plunk, were used to support four convictions—two aggravated battery counts and two aggravated assault counts. By applying the single act of violence paradigm here, Bolden can be convicted of the two counts of aggravated battery but not the two counts of aggravated assault because they merged into the more serious offenses of aggravated battery.

*No Instruction Error*

Bolden claims the trial court erred by failing to instruct the jury on lesser included offenses of aggravated battery. She did not request any such instructions from the trial court. The statute dealing with this, K.S.A. 2005 Supp. 22-3414(3), requires us to then apply a clearly erroneous standard of review:

"No party may assign as error the giving or failure to give an instruction, *including a lesser included crime instruction*, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous." (Emphasis added.)

" 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citations omitted.]" *State v. Shirley*, 277 Kan. 659, 666, 89 P.3d 649 (2004).

Here, Bolden claims that since she was charged and convicted of intentional aggravated battery as well as reckless driving, the jury should have been instructed on reckless aggravated battery or misdemeanor battery based on reckless conduct, which are less severe offenses than intentional aggravated battery. An examina-

tion of the relevant statutes shows that the defendant's claim lacks merit.

Bolden was convicted of aggravated battery under K.S.A. 21-3414(a)(1)(C). This statute states that aggravated battery is "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Going on, K.S.A. 21-3414(a)(2) details how reckless conduct can constitute aggravated battery:

"(A) recklessly causing great bodily harm to another person or disfigurement of another person; or

"(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

Additionally, in order to prove simple battery based on reckless conduct, the State must show that the defendant recklessly caused bodily harm to another person. K.S.A. 2005 Supp. 21-3412(a)(1).

All of the statutes that define how reckless conduct can constitute battery or aggravated battery require the State to prove some type of bodily harm. The facts of this case show that Plunk and Derrick did not suffer bodily harm as a result of Bolden's conduct. As a result, there is little chance that the jury would have returned a different verdict had the additional instructions been given. Thus, Bolden's argument fails because this is not clear error.

Affirmed in part, aggravated assault convictions reversed, and case remanded.